UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| PAIGE A. CARLOVSKY,<br><br>    Plaintiff<br><br>v.<br><br>DITECH FINANCIAL, LLC, et al.,<br><br>    Defendants | Case No.: 2:17-cv-01051-APG-VCF<br><br>**Order (1) Denying Plaintiff's Motion for Summary Judgment, (2) Denying Defendant's Motion for Leave to File Summary Judgment Motion, (3) Extending Dispositive Motion Deadline for Both Parties**<br><br>[ECF Nos. 34, 35] |

    Plaintiff Paige A. Carlovsky brought this action against defendant Bank of New York Mellon (BoNYM) for its role in the recording of a notice of default that contained inaccurate statements. After Carlovsky defaulted on her mortgage loan payments, the trustee of the deed of trust that encumbered her property recorded a notice of default as required by Nevada law to begin the nonjudicial foreclosure process. Attached to the notice was an affidavit of authority that inaccurately identified Ditech as the current holder, beneficiary, and servicer of the deed of trust. BoNYM was the actual holder and beneficiary while Ditech was only the servicer.

    Carlovsky filed suit against Ditech and BoNYM for violations of a Nevada statute and for declaratory relief. Subsequently, the notice of default was rescinded and Ditech ceased being the servicer of the debt. Carlovsky moved for summary judgment on her claim that BoNYM violated Nevada law, but she did not move for judgment on her declaratory relief claims. The defendants did not file their own motions at that time. Ditech later filed for bankruptcy which resulted in a stipulated dismissal of the claims against it. With the court's permission, Carlovsky refiled her motion for summary judgment as to BoNYM. In turn, BoNYM filed a motion for

leave to file a summary judgment motion long after the original dispositive motions deadline, arguing that the Ditech dismissal justified it.

I deny Carlovsky's motion for summary judgment without prejudice because she has not demonstrated that the Nevada statute allows for damages when no power of sale has been exercised. I also deny BoNYM's motion for leave to file a motion for summary judgment because it has not shown why Ditech's dismissal has changed any of the circumstances that existed at the time of the dispositive motion deadline in 2018. However, because this case may be capable of resolution on the law without the time and expense of a trial, I will extend the dispositive motion deadline for both parties to address any of the remaining claims.

## I. BACKGROUND

On June 12, 2007, Carlovsky obtained a mortgage loan from Barrington Capital Corporation (Barrington) that was secured by a deed of trust (DOT). ECF Nos. 34-1; 34-2. The named beneficiary under the DOT was Mortgage Electronic Registration Systems, Inc. (MERS). ECF No. 34-2 at 3. Barrington sold its interest to Countrywide Home Loans, Inc., who then sold it to CWMBS, Inc. ECF No. 34-3 at 8-9. In July 2007, CWMBS transferred the mortgage loan to BoNYM. *Id.* at 34-3 at 9; ECF No. 34-7 at 8. Carlovsky estimates that she first missed her loan payment around August 2015 and has not made payments since. ECF No. 40-6 at 4-5. On February 24, 2016, MERS transferred its beneficial interest in the DOT to BoNYM. ECF No. 34-2 at 2. Ditech became the servicer for the DOT on June 16, 2016. ECF No. 40-7 at 2. On October 4, 2016, Clear Recon Corp. became the trustee. ECF No. 34-5 at 2.

For a trustee to exercise its power to sell property secured by a deed of trust, Nevada law requires it to first record a notice of breach and default and election to sell (NOD), which also must contain an affidavit of authority. Nev. Rev. Stat. (NRS) § 107.080(2)(c). Clear Recon

Corp. recorded a NOD regarding this DoT on January 24, 2017. ECF No. 34-6.  The first page of the NOD correctly identified BoNYM as the beneficiary under the DOT. *Id.* at 2.  Attached to the NOD was an affidavit by Ditech employee Michele Fisher (Fisher Affidavit) that identified Ditech as the holder of the note, the beneficiary under the DOT, and the servicer of the debt. *Id.* at 5.  The Fisher Affidavit also showed that the last beneficial assignment recorded against the property was to BoNYM. *Id.* at 6.  Fisher signed this document as BoNYM's Assistant Vice President, even though she did not hold that position at the time. *Id.* at 7; ECF No. 34-3 at 13.

On April 14, 2017, Carlovsky filed suit against BoNYM and Ditech. ECF No. 1.  She sought a declaration that neither Ditech nor BoNYM was entitled to enforce the power of sale under the DOT based on the NOD.  She also sought injunctive relief, damages, and attorneys' fees for violations of NRS § 107.080(2)(c).  Finally, she claimed Ditech violated the Fair Debt Collection Practices Act (FDCPA).  In August 2017, Ditech was replaced with another servicer. ECF No. 40-4 at 12.  On August 28, 2017, Clear Recon rescinded the NOD. ECF No. 40-10.

The deadline to file dispositive motions was March 3, 2018.  On that date, Carlovsky moved for summary judgment against both defendants on her NRS and FDCPA claims, although not on her declaratory relief claims. ECF Nos. 13 at 3; 17.  Neither Ditech nor BoNYM filed motions.  On March 11, 2019, I denied Carlovsky's summary judgment motion without prejudice due to a stay caused by Ditech filing for Chapter 11 bankruptcy. ECF No. 22.  In November 2019, the parties agreed to a stipulated dismissal of all claims against Ditech due to the bankruptcy. ECF No. 29 at 2.  In a status conference on January 15, 2020, Magistrate Judge Ferenbach ordered Carlovsky to renew her summary judgment motion with the claims against Ditech removed. ECF No. 36 at 11.  During that proceeding, BoNYM requested leave to file a summary judgment motion. *Id.* at 9-12.  Judge Ferenbach did not authorize it, instead deferring

3

the question to me. *Id.* at 11. Carlovsky filed her renewed summary judgment motion and BoNYM moved for leave to file a summary judgment motion. ECF Nos. 34; 35.

Carlovsky argues in her motion that BoNYM should be liable for damages and attorneys' fees for causing a false affidavit of authority to be filed in violation of NRS § 107.080(2)(c)(1), which requires the affidavit to identify the current holder of the note and the beneficiary of record. She also argues that, because Ditech does not have a beneficial interest, it was not entitled to enforce the obligation under NRS § 107.080(2)(c)(2). BoNYM responds that the NOD was rescinded and the power of sale was not exercised so it did not violate the statute. In the alternative, it argues that it substantially complied with the affidavit requirements and that the foreclosure statutes do not require strict compliance. Finally, it contends that even if Ditech had been the beneficiary while BoNYM was the holder of the note, Ditech was authorized to foreclose on behalf of BoNYM.

BoNYM argues in its motion for leave that circumstances have changed because the Ditech claims were dismissed and the issues substantially narrowed such that a summary judgment motion would be more appropriate. BoNYM attached its proposed motion, which seeks summary judgment on the declaratory relief claims as well as the NRS claims. Without responding to the proposed motion, Carlovsky contends that Ditech's bankruptcy does not impact the arguments that BoNYM makes in its proposed motion and that it has failed to show good cause and excusable neglect for its failure to timely file a summary judgment motion as required by Local Rule 26-3.[1]

////

---

[1] The District of Nevada's Local Rules were updated on April 17, 2020. What was originally LR 26-4 is now LR 26-3.

## II. ANALYSIS

### A. Carlovsky's Motion for Summary Judgment

Summary judgment is appropriate if the movant shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c). The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying the portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the non-moving party to set forth specific facts demonstrating there is a genuine issue of material fact. *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 531 (9th Cir. 2000). I view the evidence and reasonable inferences in the light most favorable to the non-moving party. *James River Ins. Co. v. Hebert Schenk, P.C.*, 523 F.3d 915, 920 (9th Cir. 2008).

Under Nevada law, the trustee's "power of sale must not be exercised" until the beneficiary, successor in interest, or trustee records a NOD that meets certain requirements. NRS § 107.080(2)(c). Section (2)(c)(1)[2] requires that the NOD include a notarized affidavit of authority that identifies the current holder of the note, the current beneficiary of record, and the current servicer of the obligation or debt secured by the DOT. Subsection (2)(c)(2) further requires the affidavit to affirm that the beneficiary, successor in interest, or trustee is in possession of the note or that it is entitled to enforce the obligation or debt. If these parties "did not comply with any requirement" of subsection 2 (or subsections 3 or 4), a court "must" award damages, an injunction enjoining the exercise of the power of sale until the requirements are met,

---

[2] NRS § 107.080 was amended in 2017, and no longer contains provisions (2)(c)(1)-(2). I apply the earlier version of the statute because the Fisher Affidavit was executed on October 20, 2016 and the NOD was recorded January 24, 2017. ECF No. 34-6 at 2, 7; *see also* Laws 2015, c. 316, § 4, eff. June 1, 2015. The parties agree that this is the applicable version of the law. ECF Nos. 34 at 4 n.11; 40 at 5 n.1.

and reasonable attorney's fees and costs unless the court finds good cause for a different award. NRS § 107.080(8).

The Supreme Court of Nevada has not decided whether the power of sale must be exercised before a party can be liable under NRS § 107.080(8). Where Nevada's highest court has not decided an issue, I must predict how that court would decide. *Ticknor v. Choice Hotels Intern., Inc.*, 265 F.3d 931, 939 (9th Cir. 2001). I may use "decisions from other jurisdictions, statutes, treatises, and restatements as guidance." *Assurance Co. of Am. v. Wall & Assocs. LLC of Olympia*, 379 F.3d 557, 560 (9th Cir. 2004) (quotation omitted).

"When the language of a statute is unambiguous, the courts are not permitted to look beyond the statute itself when determining its meaning." *Benko v. Quality Loan Serv. Corp.*, P.3d 1263, 1266 (Nev. 2019) (internal quotations and citations omitted). If a statute lends itself to two or more different interpretations, the statute is ambiguous, and I can thus look to the legislative history to construe the statute "consistent with reason and public policy." *State v. Lucero*, 249 P.3d 1226, 1228 (Nev. 2011). Ultimately, legislative intent is the "controlling factor." *Id.* (quoting *Robert E. v. Justice Court*, 664 P.2d 957, 959 (Nev. 1983)).

The statute is ambiguous regarding when a party becomes liable for damages under NRS § 107.080(8). Subsection 8 states that its relief provisions apply when a party does not comply with "any requirement of subsection 2, 3 or 4." This suggests that violation of any of the many requirements within subsection 2, including identification of the current beneficiary and holder in the affidavit, would result in a damages award. But subsection 2 leads its requirements with the phrase, "[t]he power of sale must not be exercised [] until: . . . ." This durational language indicates that subsection 2 is only violated when the power of sale has been exercised and the statutory prerequisites have not been met. Section 107.080(2)(c) is also durational because it

6

states that the beneficiary or trustee must "first execute[] and cause[] to be recorded" the NOD with all the required information before exercising the power of sale. Therefore, "not comply[ing]" with subsection 2 would mean exercising the power of sale prior to recording a valid NOD.

Because of this ambiguity, I look to the legislative history of the statute to help decipher its meaning. The provisions of what would eventually become subsections 8 and 2(c)(1)-(2) were introduced at the same time in Nevada Assembly Bill No. 284 in 2011. *See* Records and Recordation--Assignments--Mortgages, 2011 Nevada Laws Ch. 81, § 9 (A.B. 284) (amending NRS § 107.080). The Legislative Counsel's Digest for the bill described § 107.080(8) (identified as § 9 in the bill) as providing for "civil action against a person who *exercises the power of sale* under a deed of trust without complying with the provisions of law governing the exercise of that power." *Id.* (emphasis added). This supports the interpretation that remedies in subsection 8 are meant to apply only after the power of sale has been exercised, not upon recording the NOD.

The phrase "exercising power of sale" is not defined in the statute. In the typical meaning within the context of a deed of trust, it means holding a sale so the proceeds can satisfy the obligation. Restatement (Third) of Property (Mortgages) § 8.2 (1997) ("In the event of foreclosure, the power of sale is exercised by the trustee, who holds a public sale of the real estate."). The Nevada statute sets out a multi-step process. First, there must be a recorded notice of breach and election of sale (the subject of this suit). NRS § 107.080(2)(c). Next, there is a waiting period in which the grantor has the opportunity to "make good the deficiency in performance or payment." *Id.* § 107.080(2)(a), (3). Finally, after the expiration of that period but

"before the making of the sale," a notice must be provided of the time and place of the sale. *Id.* § 107.080(4).

Based on the information the parties have provided, BoNYM did not make it beyond the first step after the inaccurate NOD was recorded. By the terms of the statute, this notice had to occur before the power of sale is exercised. NRS § 107.080(2). BoNYM did not exercise its power of sale just by recording the NOD. The NOD was later rescinded and there is no evidence that a foreclosure sale has occurred based on it.

In a motion for summary judgment, the moving party bears the burden of demonstrating the basis for its motion. *Celotex Corp.*, 477 U.S. at 323. Carlovsky has not persuaded me that she is entitled to judgment as a matter of law on this claim because she has not established that liability attaches upon the recording of a deficient NOD. I therefore deny her motion for summary judgment. However, the denial is without prejudice. As discussed below, I am extending the dispositive motion deadline for both parties. Carlovsky may file a new motion for summary judgment that addresses why the statute should be interpreted to impose liability for filing a faulty NOD even if that NOD is rescinded before a sale takes place.

**B. Defendant's Motion for Leave to File Summary Judgment Motion**

In order to extend a scheduled deadline after it has passed, a movant must show both good cause and that the failure to act was due to excusable neglect. LR 26-3. Good cause exists if the deadline could not have been reasonably met "despite the diligence of the party seeking the extension." *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992) (quoting Fed. R. Civ. P. 16 advisory committee's notes (1983 amendment)). This standard will typically not be met if the moving party "has been aware of the facts and theories supporting amendment

since the inception of the action." *In re W. States Wholesale Nat. Gas Antitrust Litig.*, 715 F.3d 716, 737 (9th Cir. 2013).

Excusable neglect exists where a party does not meet a filing deadline due to negligence or carelessness and equitable factors weigh in favor of granting an extension. *Lemoge v. United States*, 587 F.3d 1188, 1192 (9th Cir. 2009). There are four main factors for determining whether neglect is excusable: "(1) the danger of prejudice to the opposing party; (2) the length of the delay and its potential impact on the proceedings; (3) the reason for the delay; and (4) whether the movant acted in good faith." *Bateman v. U.S. Postal Serv.*, 231 F.3d 1220, 1223–24 (9th Cir. 2000) (citing *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993)).

BoNYM contends that a summary judgment motion is now appropriate because the issues have been "substantially narrowed" after the claims against Ditech were dismissed and Ditech stopped servicing the loan. ECF No. 35 at 3. It also mentions that BoNYM and Ditech were represented by the same counsel and that BoNYM's new counsel diligently proposed reopening the deadlines as soon as it came up in the status conference. Further, it argues that a new summary judgment motion will not cause delay but instead will conserve judicial resources because this case may not have to go to trial. Carlovsky responds that new counsel was not diligent because he took no action to reopen the deadline until the January 15, 2020 status conference with Judge Ferenbach. She also argues that BoNYM fails to explain why the bankruptcy changed any of the arguments that could have been made in a motion in 2018. Further, she contends that BoNYM did not lay out the four-factor test for excusable neglect and she argues that all factors weigh in favor of denying the motion.

BoNYM fails to show how any changes in this case after Ditech was dismissed justify an extension of the motion deadline. While BoNYM points out that Ditech no longer services the loan, Ditech stopped that six months before the motion deadline. ECF Nos. 13 at 3; 40-4 at 12. BoNYM does not explain how Ditech's dismissal has changed its arguments regarding its own role in the underlying events. Further, BoNYM's proposed motion appears to rely on arguments that were already available to BoNYM prior to Ditech's dismissal. Because these theories were available to BoNYM at the time of the initial deadline, good cause does not exist. *W. States Wholesale Nat. Gas Antitrust Litig.*, 715 F.3d at 737. The fact that previous counsel decided not to file a summary judgment motion by the initial deadline does not alone give new counsel good cause to reopen that deadline. I therefore deny BoNYM's motion for leave to file a summary judgment motion.[3] However, as discussed below, BoNYM may file a new summary judgment motion in accordance with the extended dispositive motion deadline.

### C. Dispositive Motion Deadline Extension

I have broad discretion in supervising the pretrial phase of litigation. *Miller v. Safeco Title Ins. Co.*, 758 F.2d 364, 369 (9th Cir. 1985). It appears that the parties largely agree on the salient facts. Rather than expending judicial resources with a trial in a case that might be decided on the law, I will extend the dispositive motion deadline another 30 days for both parties to address any of the remaining claims. Arguments whether the declaratory judgment claims are moot need not be repeated in the new motions but should instead be addressed in response to my recent order to show cause (ECF No. 46). The parties may raise other arguments on the declaratory judgment claims or the NRS claim.

---

[3] Because Local Rule 26-3 requires both good cause and excusable neglect for extension requests after the deadline, I need not reach the excusable neglect question.

### III.   CONCLUSION

I THEREFORE ORDER that plaintiff Paige A. Carlovsky's motion for summary judgment **(ECF No. 34) is DENIED** without prejudice.

I FURTHER ORDER that defendant Bank of New York Mellon's motion for leave to file a summary judgment motion **(ECF No. 35) is DENIED**.

I FURTHER ORDER that the dispositive motion deadline is extended to December 21, 2020.

DATED this 19th day of November, 2020.

ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE